Lawrence J. BARNETT, Christine Cookenback, James M. DeFeo and Madlin Laurent, Appellee

v.

SKF USA, INC., Appellant.

Superior Court of Pennsylvania.

Argued Dec. 2, 2008.
Filed July 13, 2009.
Reargument Denied Sept. 21, 2009.

Geoffrey L. Beauchamp, Willow Grove, for appellant.

No appellee brief filed.

BEFORE: PANELLA, SHOGAN, and ALLEN, JJ.

OPINION BY PANELLA, J.:

¶ 1 Appellant, SKF USA, Inc. ("SKF"), appeals the order issued on October 31, 2007, by the Honorable Bernard A. Moore, Court of Common Pleas of Montgomery County.[1] After careful review, we affirm.

¶ 2 Appellees, Lawrence J. Barnett, Christine Cookenback, James M. DeFeo and Madlin Laurent ("Appellees"), are all former salaried, non-union employees of the Philadelphia plant of SKF, which was part of the MRC Bearings Division ("the division") located in King of Prussia, Pennsylvania. SKF maintained a written pension plan governed by the Employment Retirement Income Security Act ("ERISA")[2] for its salaried employees, Appellees, at the Philadelphia plant. Under SKF's non-union pension plan, any salaried employee who reached the age of 45 years and had 20 years of service with SKF at the time of termination was entitled to receive immediate vesting of pension benefits. None of the Appellees had reached the age of 45 or, in the alternate, completed 20 years of service at the time their employment with SKF terminated.

¶ 3 On September 29, 1993, Appellees instituted a cause of action for breach of an oral agreement against their employer, SKF, alleging that SKF requested that they continue working at its Philadelphia plant and forego seeking alternate employment until the plant closed later that year in December, 1991. Appellees specifically contended that, in exchange for their continued employment, SKF orally[3] offered

---

1. SKF purports to appeal from the trial court's orders filed on October 31, 2007 and November 27, 2007, denying summary judgment, and the corresponding opinion of the trial court filed on April 3, 2008. However, we note that it was the October 31, 2007 order denying SKF's renewed motion for summary judgment which supported SKF's petition for permission to appeal to this Court, which permission was summarily granted on February 6, 2008. *See* Pa.R.A.P., Rule 312, 42 Pa. Cons.Stat.Ann. (an appeal from an interlocutory order may be taken by permission pursuant to Appellate Rule 312).

2. 29 U.S.C. § 1001 et seq.

3. Appellees contend that the oral promise concerning the early pension vesting rights was initially communicated to one of them, James M. DeFeo, via a telephone conversation he had with SKF Human Resources Director, James Erven, during the week of June 7, 1991, wherein Mr. Erven purportedly stated, "If the union gets it, you'll get it." *See* Deposition of James M. DeFeo, 11/20/96, at 33.

them specific termination rights equal to that which was offered to the union members of SKF when the plant closed in 1991, terms which Appellees accepted.[4] Appellees thereafter sought to confirm the promised benefits via a written memorandum issued to a SKF Plant Manager, Tony Del Signore, on June 17, 1991. However, upon the closing of the Philadelphia division, SKF failed to provide Appellees with the promised severance benefits and litigation subsequently ensued.

¶ 4 Thereafter, SKF filed preliminary objections to the complaint, challenging the Appellees' cause of action on grounds of preemption under ERISA, which were denied. SKF subsequently submitted two consecutive motions for summary judgment, again opposing the instant action on the basis of preemption under ERISA; both motions for summary judgment were summarily denied. Thereafter, SKF instituted this timely appeal.

¶ 5 On appeal, SKF raises the following single issue for our consideration:

WHETHER THE TRIAL COURT ERRED AS A MATTER OF LAW IN DENYING SKF'S RENEWED MOTION FOR SUMMARY JUDGMENT ON THE GROUNDS THAT THE APPELLEES' BREACH OF CONTRACT CLAIM WAS NOT PREEMPTED, AND THEREFORE NOT BARRED, BY ERISA?

Appellant's Brief, at 3.

 ¶ 6 Our standard of review and the general rule for reviewing a lower court's grant or denial of summary judgment is as follows:

> Our review on an appeal from the grant of a motion for summary judgment is well-settled. A reviewing court may disturb the order of the trial court only where it is established that the court committed an error of law or abused its discretion. As with all questions of law, our review is plenary.
>
> In evaluating the trial court's decision to enter summary judgment, we focus on the legal standard articulated in the summary judgment rule. The rule states that where there is no genuine issue of material fact and the moving party is entitled to relief as a matter of law, summary judgment may be entered. Where the non-moving party bears the burden of proof on an issue, he may not merely rely on his pleadings or answers in order to survive summary judgment. Failure of a non-moving party to adduce sufficient evidence on an issue essential to his case and on which it bears the burden of proof establishes the entitlement of the moving party to judgment as a matter of law. Lastly, we will view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party.

*Evans v. Sodexho*, 946 A.2d 733, 737–38 (Pa.Super.2008) (internal citations and quotation marks omitted).

 ¶ 7 Finally, "[a]s the issue as to whether there are no genuine issues as to

4. SKF also employed hourly, union employees from the United Steel Workers of America Local 2898 ("union employees"). The union employees' wages, hours and other terms of employment were governed by a collective bargaining agreement between the Union and SKF. After announcing its impending closing in January 1991, SKF entered into an additional agreement (entitled "Effects Bargaining") which permitted union employees who had not reached 45 years of age or 20 years of service to "add" to their age or service through the expiration of the collective bargaining agreement in 1993, denoted by the parties as the "creeps provision." Appellees' nonunion pension plan contained no similar provision. *See* Complaint, paragraphs 8–14 (R. 7a–9a).

any material fact presents a question of law, our standard of review is *de novo;* thus, we need not defer to the determinations made by the lower tribunals." *Scalice v. Pennsylvania Employees Benefit Trust Fund,* 584 Pa. 161, 172, 883 A.2d 429, 435 (2005) (citation omitted). Our scope of review, to the extent necessary to resolve the legal question before us, is plenary. *See id.* (citation omitted).

¶ 8 SKF contends that the Appellees' breach of oral contract cause of action is governed by the holding set forth by the United States Court of Appeals for the Third Circuit Court in *Hooven v. Exxon Mobil Corp.,* 465 F.3d 566 (3rd Cir.Pa. 2006), and is thereby preempted and barred by ERISA. Prior to resolving this issue, we turn first to the pertinent law concerning preemption.

■ ¶ 9 Section 1144 of Title 29, of the United States Code, provides that "[ERISA] shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) ... and not exempt under section 1003(b) of this title." *See* 29 U.S.C.A. § 1144(a). The central question in applying this provision is the meaning assigned to the language "relate to," as preemption can only occur if the state law does, in fact, relate to an employee benefit plan falling under this section. *See Greenblatt v. Budd Co.,* 666 F.Supp. 735, 741 (E.D.Pa.1987). Thus, "[s]tate laws that make reference to, or otherwise attempt to or succeed in regulating or administering employee pension plans 'relate to' ERISA and are accordingly preempted." *See id.* (citations omitted).

■ ¶ 10 Our Supreme Court noted in *Pappas v. Asbel,* 564 Pa. 407, 412, 768 A.2d 1089, 1092 (2001), that "the Supremacy Clause of the United States Constitution ... article VI, cl. 2, gives the United States Congress the power to preempt

state law, and observed that in determining whether state law is preempted by federal law, we [are] to assume that the historic powers of the states are not superceded unless preemption is the *clear and manifest purpose* of Congress." *See id.* (emphasis added). The *Pappas* Court duly noted that "preemption does not occur ... if the state law has only a tenuous, remote, or peripheral connection with covered plans, as in the cases with many laws of general applicability...." *See id.,* 564 Pa. at 412–13, 768 A.2d at 1092. Thus, in those cases where a state law or cause of action impacts upon ERISA in an indirect manner, that is, only tenuously or remotely, then preemption under ERISA is not warranted.

■ ¶ 11 We agree with the trial court that the instant case presents the latter situation and conclude that Appellees' cause of action neither impacts upon the Appellees' employee benefit plan at issue here, or ERISA. As such, preemption of Appellees' cause of action under ERISA is clearly not required.

¶ 12 In *Greenblatt,* a matter factually similar to the case before this Court, the Eastern District Court of Pennsylvania found that a worker's claim, alleging that his employer misrepresented to him pension benefits that he was receiving under a pension plan would be made equal to those benefits available to comparable salaried management personnel under another pension plan, and that he relied on this misrepresentation to his detriment, was not preempted by ERISA. *See id.,* 666 F.Supp. at 742. Central to the Eastern District Court's holding was the following findings:

> The cause of action for misrepresentation alleged by the plaintiff at Count II of his complaint should not be preempted because, simply put, the premise un-

derlying this action was that plaintiff was deceived by the verbal statements made and the actions taken by his employer. *That the subject of the deception concerned pension benefits is only incidental and not essential to the plaintiff's cause of action.* Like promises for a raise in salary, a promotion, or the use of tickets to a baseball game, plaintiff's employer's promise to provide the plaintiff with certain benefits at some unknown time in the future, upon which plaintiff could reasonably rely, is the essence of the fraud alleged.

That this action alleged at Count II of plaintiff's complaint does not "relate to" an employee benefit plan is supported also by the fact that the representations at issue were made by plaintiff's superiors, as his employers, and not as plan fiduciaries. Similarly, the misrepresentations at issue were made to plaintiff in the ordinary course of business and not in the course of administering a Budd Company pension plan.

Moreover, if the plaintiff succeeds in proving these allegations, the compensatory damages would be paid directly to him by The Budd Company. There is no principled basis for the conclusion that compensatory damages should be paid out of any Budd Company employee pension benefit plan.

Finally, the case law suggests and this Court is persuaded that the plaintiff would be without a remedy under ERISA ... As such, it would defy logic to presume that Congress intended to preempt the common law action of fraud in a situation of this type ... Accordingly, the plaintiff states a valid cause of action under Pennsylvania law for fraud. *See id.* (citations omitted) (emphasis added).

¶ 13 Here, we note that, similar to the *Greenblatt* litigant, Appellees' claim that SKF breached its oral agreement to increase their severance benefits in exchange for their continued employment until the company ceased its Philadelphia division's operations only incidentally involves Appellees' pension benefits plan. That Appellees' action does not "relate to" an employee benefit plan is supported by the fact that the oral contract to pay enhanced severance benefits was made by one of Appellees' superiors, as their employer, and not as a plan fiduciary. Similarly, the oral contract at issue was made to the Appellees in the ordinary course of business and not in the course of administering an SKF pension plan. Although Appellees' complaint references SKF's separate pension plans with its union versus non-union employees, we agree with the trial court that this distinction was presented by Appellees only to demonstrate the company's long standing practice of providing non-union employees with the same or enhanced benefits than those provided to union employees. Appellees' breach of contract claim is, at most, only tenuously related to their employee benefit plan.

¶ 14 Further, we do not agree with SKF that *Hooven* controls our decision on the issue presented for our consideration or is even binding authority upon this Court, as we note that decisions of the courts of appeals are merely persuasive authority on federal questions where the United States Supreme Court has not yet issued a ruling. *See Chiropractic Nutritional Associates, Inc. v. Empire Blue Cross & Blue Shield,* 447 Pa.Super. 436, 669 A.2d 975, 979–80 (1995) ("The decisions of the federal district courts and courts of appeal, including those of the Third Circuit Court of Appeals, are not binding on Pennsylvania courts, even when a federal question is involved.").

¶ 15 Contrary to the instant case, the *Hooven* case involved claims for breach of fiduciary duty specifically brought under ERISA, equitable estoppel, procedural and reporting violations, as well as an ancillary federal breach of contract claim based on the plaintiffs' alleged detrimental reliance upon a severance document promising them enhanced severance benefits following their company's merger. *See Hooven*, 465 F.3d at 571. In that case, the district court, following a lengthy trial, found that the litigants' fiduciary duty claim failed due to the lack of evidence supporting their allegation that they had detrimentally relied on the initial SPD [summary plan description], finding that the litigants had continued to work for their employer in order to have the opportunity to work for the new company following the merger, not to collect enhanced severance benefits. *See Hooven v. Exxon Mobil Corp.*, 2004 WL 724496, at *13. The district court further found that the litigants' equitable estoppel and reporting and disclosure violation claims failed due to the absence of extraordinary circumstances, *i.e.*, acts of bad faith on the part of the employer with respect to changes in the plan. *See id.*, at *17. Finally, although the district court found that the litigants had not asserted a valid claim for recovery of benefits under ERISA, the court nonetheless permitted the claim as "arising out of a unilateral contract," finding that the employer's obligation became fixed when the Plaintiffs accepted the CIC Plan [change-in-control retention/severance plan] by continuing to work for Mobil up until and after the merger. *See id.*, at *17–18.

¶ 16 On appeal, in denying the *Hooven* litigants a recovery for enhanced benefits under a unilateral contract theory arising from the underlying ERISA claim, the Third Circuit noted the following:

> It is one thing to acknowledge that contract principles apply in ERISA cases.

Clearly, they do. Generally, "breach of contract principles, applied as a matter of federal law, govern" claims for benefits due under an ERISA plan. *Kemmerer v. ICI Americas Inc.*, 70 F.3d 281, 287 (3rd Cir.1995). However, it is quite another to say that an employee's severance benefit can be grounded in, and enforceable based on, a unilateral contract outside of ERISA's remedial scheme. Although this approach is intuitively appealing, and seemingly appropriate in this complex area, we conclude that it is inconsistent with the basic framework of ERISA and, therefore, cannot be.

We begin with a fundamental premise: every claim for relief involving an ERISA plan must be analyzed within the framework of ERISA. The District Court found, and the parties agree, that the CIC Plan is an "employee welfare benefit plan" covered by ERISA. *Hooven*, 2004 WL 724496, at *17 (citing 29 U.S.C. § 1002(1)). ERISA is a "comprehensive statute for the regulation of employee benefit plans," *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208, 124 S.Ct. 2488, 159 L.Ed.2d 312 (2004); it is intended "to occupy fully the field of employee benefit plans," *Reichelt v. Emhart Corp.*, 921 F.2d 425, 431 (2d Cir. 1990).

The District Court found that Plaintiffs' claim was not based on ERISA, but nevertheless allowed it as arising out of a unilateral contract, whereby Mobil's obligation became fixed when Plaintiffs accepted the CIC Plan by continuing to work for Mobil up until and after the merger. Unfortunately for Plaintiffs, this contract-based construct just does not fit within the ERISA structure. ERISA requires "that any contractually accrued rights be discernible from the written terms of the formal ERISA plan

documents themselves." *Carr v. First Nationwide Bank,* 816 F.Supp. 1476, 1490 (N.D.Cal.1993). Although we occasionally employ unilateral contract concepts in ERISA cases, we do so only where "the asserted unilateral contract is based on the explicit promises in the ERISA plan documents themselves." *Id.* at 1490–91. Unilateral contract principles may not operate to create extra-ERISA causes of action for plan benefits.

*Hooven,* 465 F.3d at 572–73.

¶ 17 After reviewing the facts and principles cited in *Hooven,* we find that that decision is factually distinct from the instant case. Appellees have not asserted any claim under ERISA, nor have they brought their oral breach of contract cause of action as an ancillary action to an ERISA claim as done in *Hooven.* Indeed, had Appellees attempted the latter, their oral breach of contract action would have undoubtedly failed, as all claims brought under ERISA must be based upon a writing. *See* 29 U.S.C.A. § 1102(a)(1).

¶ 18 For the reasons we have discussed above, we conclude that the trial court neither committed an error of law nor abused its discretion in denying SKF's motion for summary judgment on grounds that Appellees' breach of oral contract cause of action is only tenuously related to an ERISA plan, and is therefore not preempted by 29 U.S.C.A. § 1144.

¶ 19 Order affirmed. Jurisdiction relinquished.

¶ 20 Judge SHOGAN notes her dissent.