OPINION OF THE COURT

STAPLETON, Circuit Judge:
Appellant Joseph J. Freebery filed this civil action against New Castle County, the County Executive of New Castle County, and Jane and John Does 1-25, alleging, among other claims, violations of the First and Fourteenth Amendments and state law claims of breach of contract and breach of the duty of good faith and fair dealing. Freebery appeals the order of the District Court granting summary judgment in favor of defendants.
Because we write only for the benefit of the parties, we assume familiarity with the facts of this civil action and the proceedings in the District Court. We will affirm essentially for the reasons stated by the District Court.
I.
In 1984, Freebery began working for defendant New Castle County as its Superintendent of Parks. This position was a classified position within the New Castle County merit system.[1] In 1996, Thomas Gordon was elected County Executive of New Castle County. He appointed Freebery’s sister, Sherry Freebery, to serve as New Castle County’s Chief Administrative Officer. At that time, county departments were managed by Directors who were appointed by the County Executive. Pursuant to state law, Directors served at the pleasure of the County Executive and, thus, those positions were unclassified and unprotected by the New Castle County merit system.
After taking office, Gordon and his Chief Administrative Officer began to restructure county government. As part of their reorganization plan, they reduced the number of county departments and created a General Manager position to head each department. Gordon and Freebery also sought to classify the newly created General Manager position as a position within the New Castle County merit system. A change in state law was required to implement this reorganization. Gordon and Freebery lobbied the Delaware legislature and the state code was amended to include these changes in 1997. Appellant *648 Freebery was promoted to General Manager of the Department of Special Services that year. He claims that he accepted the position in reliance on Gordon’s and Sherry Freebery’s promises that the position would always retain the protections of the merit system.
In 2003, Christopher Coons—who was at that time President of the New Castle County Council—lobbied the Delaware legislature for a bill that would allow the County Executive to appoint General Managers that served at his pleasure, and, thereby change the General Manager to a position that was not protected by the merit system. Appellant Freebery opposed the bill and lobbied against it. The bill passed the Delaware House of Representatives but was not voted on in the Senate and, thus, was not enacted.
After the bill failed in 2003, Gordon wrote a memorandum to each General Manager. The memorandum explained that the General Manager positions were protected by the merit-system, and, therefore, the General Managers could not be terminated except for “just cause or nonperformance.” [A 467-68] The memorandum, however, acknowledged that “someone could change state law” and thereby remove the protections. [A 467]
In 2004, Coons and Sheny Freebery opposed each other in the Democratic primary for the County Executive. Appellant Freebery supported his sister in the election. Coons defeated Sherry Freebery in the primary and won the general election. Shortly after taking office, County Executive Coons again lobbied the Delaware legislature to remove the General Manager position from merit system classification. This time, the bill passed both houses and became effective in February of 2005.
Coons and his staff then conducted a review of the county government. On April 6, 2005, Freebery was offered the choice of whether to retire, resign, or be terminated and chose termination. Freebery subsequently filed this civil action.
II.
The District Court granted summary judgment on Freebery’s Fourteenth Amendment due process claim, finding that Freebery had no protected interest in his job when he was terminated. In evaluating Freebery’s due process claim, we first determine “whether the asserted individual interests are encompassed within the fourteenth amendment’s protection of ‘life, liberty, and property.’ ” Dee v. Borough of Dunmore, 549 F.3d 225, 229 (3d Cir.2008) (quoting Robb v. City of Phila., 733 F.2d 286, 292 (3d Cir.1984)). If we conclude that such an interest is at stake, we then “decide what procedures constitute ‘due process of law.’” Id. (quoting Robb, 733 F.2d at 292).
To have a property interest in public employment, an employee must have a “legitimate entitlement to ... continued employment.” Elmore v. Cleary, 399 F.3d 279, 282 (3d Cir.2005). State law determines whether a public employee has a property interest in public employment. See Bishop v. Wood, 426 U.S. 341, 344, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976). The District Court correctly concluded that Freebery did not have a protected interest in his position as General Manager pursuant to Delaware law because, as of February 9, 2005, he served at the pleasure of the County Executive. See Del.Code Ann. tit. 9, § 1120. After his position was removed from the protections of the merit system, Freebery no longer had an entitlement to continued employment with New Castle County. See Elmore, 399 F.3d at 282 (“[0]nce a court determines that a public employee held his position at the will and pleasure of the [government enti *649 ty], such a finding necessarily establishes that [the employee] had no property interest in the job sufficient to trigger due process concerns.” (internal quotations and citations omitted)). Accordingly, no process was due to him before he was terminated.
Next, Freebery argued that he had a protected property interest in public employment because he had an employment contract with New Castle County. He claims that Gordon and Sherry Freebery promised the candidates for the General Manager positions that they would always be protected by the merit system, regardless of whether Delaware law changed the classification of the General Manager position. Assuming, arguendo, that such a contract existed, the District Court correctly held that such a contract was ultra vires. Under Delaware law, New Castle County “deriv[es] ... its authority to govern directly from the State.” See State ex rel. Wier v. Peterson, 369 A.2d 1076, 1079 (Del.1976). The County must exercise its authority in accordance with Title 9 of the Delaware Code. See Del.Code Ann. tit. 9, § 1103. In Title 9, the Delaware legislature has enacted laws that determine the procedures for appointing department heads and whether the department heads serve at the pleasure of the County Executive. See Del.Code Ann. tit. 9, § 1120. New Castle County, through Gordon and his Chief Administrative Officer, had no authority to promise Freebery a position as a department head with merit system protections regardless of changes in state law. As the District Court correctly observed:
According to their own memorandum, Mr. Gordon and Ms. Freebery intended to create an employment contract that would immunize Plaintiff and the other GMs from changes in state law. (Doc. No. 183 Ex. 7.) That effort was certainly outside their authority. Accordingly, the contract based on the employment promises of Mr. Gordon and Ms. Freebery is ultra vires and unenforceable.
[A 11] Thus, Freebery did not have a property interest in continued employment through an alleged contract with the County. Freebery’s state law claim of breach of contract fails for the same reasons.
The District Court also correctly held that Gordon lacked authority to bind his successors through contracts concerning governmental, as opposed to business or proprietary, matters. 10A McQuillin, The Latv of Municipal Corporations § 29:101 (3d ed.). As the Court explained, “contracts that directly implicate the nature of government—such as the employment contracts of an executive officer’s ‘cabinet’ ... certainly relate[] to ‘governmental matters’ [and][p]rohibiting ‘governmental contracts’ that extend beyond the term of the contracting official is ... vital to preserving a republican form of government.” [A 14]
Neither were Freebery’s rights to freedom of association violated when he was terminated. He claims he was terminated for supporting his sister, Sherry Freebery, in the primary campaign. To make out a prima facie case of political patronage discrimination, a plaintiff must show that “1) [he] was employed at a public agency in a position that does not require political affiliation, 2)[he] was engaged in constitutionally protected conduct, and 3) this conduct was a substantial or motivating fact in the government’s employment decision.” Galli v. New Jersey Meadowlands Comm’n, 490 F.3d 265, 271 (3d Cir.2007). Freebery failed to make out the first element of his First Amendment claim because he was unable to show that, as General Manager of the Special Services Department, he worked in a position that did not require political affilia *650 tion. See Galli, 490 F.3d at 271; see also Brown v. Trench, 787 F.2d 167, 169-70 (3d Cir.1986) (describing factors to consider when determining whether a position requires political affiliation); Del.Code Ann. tit. 9, § 1341 (enumerating duties of General Manager of the Special Services Department). Freebery, however, contends that the policymaking exception was inapplicable because he was protected from termination by the alleged employment contract and state law. The contract and the merit system protections, however, do not alter the test used to determine whether Freebery’s First Amendment rights were violated. And, in any case, Freebery did not have a valid tenure contract with New Castle County and his position was no longer protected by the merit system when he was terminated. Accordingly, Coons and New Castle did not violate Freebery’s right to freedom of association by terminating him.
Freebery also complains that the District Court erred in granting summary judgment on his claim that his right of familial association with his sister was violated by his termination. Freebery contends that the District Court erred by requiring him to produce evidence establishing that his employer’s actions interfered with this familial relationship pursuant to Lyng v. Int’l Union, United Auto. Aerospace & Agric. Implement Workers of Am., 485 U.S. 360, 365-66, 108 S.Ct. 1184, 99 L.Ed.2d 380 (1988). Assuming without deciding that the District Court erred in applying this standard, it is clear that summary judgment was properly granted on this claim. Freebery did not produce evidence demonstrating that his familial associations were a “substantial factor” in his termination. See Gorum v. Sessoms, 561 F.3d 179, 184 (3d Cir.2009). Moreover, Freebery’s familial association claim in Count III is duplicative of his First Amendment retaliation claim in Count II. The facts pled in support of his familial association claim relate only to Freebery’s activities in support of his sister’s political career, and the fact Freebery supported a political candidate who happened to be his sister does not transform a political retaliation claim into a familial association retaliation claim. As discussed above, defendants did not violate the Constitution by terminating Freebery even if that termination resulted from his political support for his sister because the policymaker exception applied to his position as a department manager.
Finally, Freebery claims that Coons and his Chief Administrative Officer breached the implied covenant of good faith and fair dealing by falsifying or manipulating his employment record to create grounds to terminate him. The Delaware Supreme Court has applied the covenant of good faith and fair dealing to at-will employment contracts, such as the one Freebery held after the general manager position was no longer protected by the merit system. See E.I. DuPont de Nemours & Co. v. Pressman, 679 A.2d 436, 441 (Del.1996). The covenant “limits at-will employment in only very narrowly defined categories” because “a broad application” of the covenant could “effectively end at-will employment.” Id. at 441-42. An employer, however, may breach the covenant by falsifying the employee’s record “to create fictitious grounds to terminate employment.” Id. at 443-44. The District Court correctly concluded that Freebery failed to present evidence tending to show that Coons or his Chief Administrative Officer falsified or manipulated Freebery’s employment record to create grounds to terminate him. Instead, the record shows that Freebery’s employers were dissatisfied with his management style and became convinced that he did not fit well *651 within the Coons administration. Although Freebery may disagree with these assessments, this disagreement does not establish a breach of the covenant of good faith and fair dealing. Accordingly, summary judgment was properly granted on this claim.
III.
The judgment of the District Court will be affirmed.

. Among other protections, the New Castle County merit system provides that classified employees will only be terminated for "delinquency, misconduct, inefficiency or inability to perform the work of the position satisfactorily.” New Castle County Code § 26.03.907. Classified employees are also entitled to written notices of the reasons for terminations, pretermination hearings, and appellate procedures. Id.